64 F.3d 661
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold SURGINER, Defendant-Appellant.
 No. 94-5761.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 14, 1995.
Decided: August 21, 1995.
 
 Robert Eugene Bogan, Nelson, Mullins, Riley & Scarborough, L.L.P., Columbia, South Carolina, for Appellant. E. Jean Howard, Assistant United States Attorney, Columbia, South Carolina, for Appellee. J. Preston Strom, Jr., United States Attorney, Mark C. Moore, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Harold Surginer appeals his 140-month sentence for distribution of fentanyl. We affirm.
 
 I.
 
 2
 Harold Surginer was a relatively minor participant in a large drug ring (the Jones organization) in Columbia, South Carolina. After an investigation (code named "Dogfood"), a federal grand jury returned a twenty-nine count indictment against the Jones organization. Surginer was named in only two counts: Count One, which charged all of the defendants with conspiracy, and Count Eleven, which charged Surginer with distribution of a small quantity (.15 grams) of fentanyl on February 7, 1992.
 
 
 3
 Surginer pled not guilty, but then began negotiating a plea bargain. He agreed to plead guilty to the substantive count and to cooperate fully with the government's continuing investigation. The government agreed to drop the conspiracy count, with Surginer's "understanding ... that ... such dismissed count[ ] may be considered as relevant conduct pursuant to Section 1B1.3 of the United States Sentencing Commission Guidelines[.]"
 
 
 4
 Surginer pled guilty to Count Eleven, and a presentence report was prepared. Meanwhile, Surginer was very cooperative with the government, accepted responsibility for his crimes, and rendered substantial assistance.
 
 
 5
 The presentence report ascribed three quantities of drugs to Surginer. The first is unassailable--the .15 grams of fentanyl that he pled guilty to distributing. The second was based on statements given by other conspirators that, when taken together, suggested that Sur giner delivered bundles of heroin to dealers over a twelve-week period. The third and largest quantity was 632 grams of crack and 6 grams of powder cocaine found in the ceiling of a house (belonging to coconspirator Jerry McCarthy) in which Surginer was present when police executed a search warrant.
 
 
 6
 Surginer's lawyer objected to the inclusion of the second and third amounts. The probation officer revised the second amount downward by using conservative figures for the number of bundles of heroin (six, or nine grams) and number of days per week (four) that Surginer delivered. The officer continued to believe that the third amount was appropriately included in full, however. The final presentence report calculated a base offense level of 36, minus two for minor role in the offense, and minus three for acceptance of responsibility, leaving an adjusted offense level of 31. Surginer has an extensive criminal history, which earned him a place in the highest criminal history category--VI. The resulting sentencing range is 188-235 months.
 
 
 7
 At the sentencing hearing, Surginer dropped his objection to the drug weight used in the guidelines computation. The government then moved for a three-level downward departure to reward Surginer for his substantial assistance. The district court granted the motion. At level 28, Surginer's sentencing range was 140-175 months, and the district court sentenced him at the very bottom of that range.
 
 
 8
 Surginer appeals his sentence.
 
 II.
 
 9
 Surginer argues that he received ineffective assistance of counsel when his lawyer below withdrew his objection to the drug weight calculated in the presentence report. This court ordinarily does not reach the merits of claims of ineffective assistance on direct appeal unless the ineffective assistance conclusively appears from the record. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir.1991), cert. denied, 503 U.S. 997 (1992).
 
 
 10
 There is certainly not ineffective assistance apparent on this record. A very good tactical reason--not being overly contentious while Surginer still needed the government to make a substantial assistance motion and the district court to be convinced that he had accepted responsibility--supported the defense lawyer's decision. Moreover, the tactic paid big dividends. Surginer received his substantial assistance motion, and the district court sentenced at the very bottom of the resulting range. Moreover, as we describe below, though the withdrawn objection was not frivolous, it was far from a sure winner.
 
 III.
 
 11
 Because Surginer withdrew his objection to the drug weight calculation, review is for plain error under the Olano test. There must be an error that is plain and that affects substantial rights. If so, the court has discretion to reverse if the error seriously undermines the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 113 S.Ct. 1770, 1776 (1993).
 
 
 12
 "Relevant conduct" includes,
 
 
 13
 in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]
 
 
 14
 USSG Sec. 1B1.3(a)(1)(B).
 
 
 15
 Surginer's best argument is that the third and largest drug amount (the crack and powder cocaine seized during the search of his coconspirator's house), even if it were foreseeable to him, bore no relationship to his offense of conviction. The seizure of this crack and powder cocaine took place five months after he committed his offense of conviction, and it is difficult to deem this criminal activity as being "dur ing," "in preparation for," or "in the course of attempting to avoid detection" for that offense.
 
 
 16
 Nevertheless, we see no plain error, for two reasons. First, Surginer's plea agreement waived this objection because he agreed that the dropped conspiracy count could be used as relevant conduct, and the third drug amount was clearly possessed "during" the conspiracy.
 
 
 17
 Second, the guidelines define "relevant conduct" more broadly in drug cases. Subsection (a)(2) of USSG Sec. 1B1.3 states:
 
 
 18
 [S]olely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, [relevant conduct includes] all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]
 
 
 19
 Section 3D1.2(d) mandates grouping "[w]hen the offense level is determined largely on the basis of ... the quantity of a substance involved." It then specifically identifies the guideline applicable to drug trafficking (Sec. 2D1.1) as one for which grouping is required. Consequently, in drug trafficking cases, "relevant conduct" need not have as direct a connection to the offense of conviction as Sec. 1B1.3(a)(1)(B) would otherwise demand. It is enough that the other criminal activity is "part of the same course of conduct or common scheme or plan." Surginer concedes that he was a member of the conspiracy, so the third amount is in all likelihood properly attributable to him. In any event, it is not a "plain error" to attribute the drugs to him.
 
 
 20
 As for the second drug amount (the one calculated from six bundles of heroin times twelve weeks times four days per week), Surginer's argument is limited to the quality of the government's proof.[1] Of course, the government was not put to its proof because Surginer withdrew his objection. There is ample, though scattered, evidence in the record, mostly from interviews with coconspirators, to support this approximation. Moreover, inclusion of the second amount made no difference in Surginer's sentence. He would start at base offense level 36 even if it were stricken.[2] Therefore, under Olano, even if there were an error here, it did not affect Surginer's substantial rights.
 
 
 21
 The judgment of the district court is affirmed.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 He also argues that the government should be required to prove drug weight by clear and convincing evidence, as the Third Circuit decreed in United States v. Kikumura, 918 F.2d 1084 (3rd Cir.1990). The precedents of this court say otherwise. United States v. Urrego-Linares, 879 F.2d 1234, 1237-1238 (4th Cir.), cert. denied, 493 U.S. 943 (1989)
 
 
 [2]
 The 632 grams of crack, standing alone, place Surginer at base offense level 36. USSG Sec. 2D1.1(c)(2)